IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CRYSTAL HOLLAND,**
Individually and On Behalf
Of All Others Similarly Situated; and
**RENEE MONTGOMERY, JULIUS PETTY,**
**JOE DAUGHERTY, and MOHANNED AHMED,**
Each Individually and
On Behalf Of All Others Similarly Situated                **PLAINTIFFS**

vs.                                    No. 4:20-cv-0344-KGB

**ROCK BORDELON; ALLEGIANCE HOSPITAL**
**OF NOTH LITTLE ROCK, LLC, d/b/a**
**NorthMetro Medical Center; T. JASON REED;**
**FREEDOM BEHAVIORAL HOSPITAL OF**
**CENTRAL ARKANSAS, LLC;**
**GPN/JACKSONVILLE, LLC; and**
**ALLEGIANCE HEALTH MANAGEMENT, INC.**                **DEFENDANTS**

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL**
**CERTIFICATION, FOR APPROVAL AND DISTRIBUTION OF NOTICE**
**AND FOR DISCLOSURE OF CONTACT INFORMATION**

## I.   INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs, former employees of Defendants, brought this lawsuit on behalf of all former

employees of Defendants who were denied minimum and overtime wages for work in July and

August of 2019 as required by the AMWA and the FLSA.  Defendants owned, operated, and set

policies for North Metro Medical Center in Jacksonville, Arkansas, which is a hospital.

In order to successfully provide hospital services to patients, Defendants employed doctors

and staff, such as Plaintiffs and Opt-In Plaintiffs, who performed a variety of tasks under

Defendants' direction. These employees of Defendants were not paid for their work in July and

August of 2019 for hours that Defendants knew they worked, while the hospital was being sold.

Accordingly, Plaintiffs request that this Court conditionally certify a collective action pursuant to Section 216(b) of the FLSA. In addition, Plaintiffs request approval of their practical, common-sense plan for facilitating notice to potential class members. Because the clock is running against all potential opt-ins, Plaintiffs requests expedited review of their Motion as described below.

## II.    ARGUMENT

### A. This Court Should Conditionally Certify the Proposed Class as a Collective Action for Notice Purposes.

This Court should conditionally certify the proposed group as a collective action for notice purposes.  Section 1 below explains, legally, what conditional certification in an FLSA case means, what Plaintiffs must prove in order to have this case conditionally certified as a "collective action," and why expedited consideration of the motion for certification and notice to the putative class is important.  Section 2 describes how and why Plaintiffs have met the lenient standard for conditional certification of a collective action in this stage of the case.

1.  <u>Plaintiffs may obtain conditional certification of a class if Plaintiffs make a modest factual showing that Plaintiffs are "similarly situated" to the other proposed class members.</u>

Plaintiffs may obtain early conditional certification of a class if Plaintiffs make a modest factual showing that Plaintiffs are "similarly situated" to the other proposed class members.  In *Hoffmann-La Roche, Inc. v. Sperling*, the Supreme Court of the United States held that district courts have the discretion to certify a class and issue orders authorizing notice to potential members of a collective action of the opportunity to "opt-in" to a collective action.  493 U.S. 165, 169 (1989). The key issue presented to the court exercising its discretion to certify a collective class is whether the persons to whom notice would go are "similarly situated" to plaintiffs.  29 U.S.C. § 216(b);

*O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009); *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001).

Neither the FLSA nor the Eighth Circuit has expressly defined what "similarly situated" means for purposes of determining when a collective action is appropriate; however, a majority of district courts in the Eighth Circuit have adopted the two-tiered approach to certification of collective actions, as established by *Mooney v. Aramco Service*, 4 F.3d 1207 (5th Cir. 1995).  *See, e.g., Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 940 (W.D. Ark. 2007);  *Madden v. Lumber One Home Center of Stuttgart, Inc.*, No. 4:10-cv-1162-JLH, 2010 U.S. Dist. LEXIS 127558, at *13 (E.D. Ark. Dec. 2, 2010); *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 890–891 (N.D. Iowa 2008).

This two-tiered approach envisions an initial "conditional certification" for notice purposes early on in a case (known as the "notice stage"), and then a second opportunity to evaluate the propriety of certification when a defendant moves for decertification following the close of discovery. *Salter v. Onyx Corp.*, No. 4:10-cv-906-JLH, 2011 U.S. Dist. LEXIS 23291, at *3 (E.D. Ark. Feb. 24, 2011); *See also Robertson v. LTS Management Services, LLC*, 642 F. Supp. 922, 925 (W.D. Mo. 2008). This two-step certification inquiry is described in *Mooney* as follows:

> The first determination is made at the so-called "notice-stage." At the notice stage, the district court makes a decision—usually only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.

> Because the Court has minimal evidence, this determination is made using a fairly lenient standard and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the Defendant usually filed after discovery is largely complete, and the matter is ready for trial. At this stage, the court has much more information on which to base its decision and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in Plaintiffs are dismissed without prejudice. The class representatives—*i.e.*, the original Plaintiffs—proceed to trial on their individual claims.

4 F. 3d at 1213–14. Courts in the Eastern and Western Districts of Arkansas have followed the framework of the two-tiered approach outlined in *Mooney*. *See, e.g.,* Order at 6–7, *Lochridge v. Lindsey Management, et al.*, 5:12-cv-05047 (W.D. Ark. Feb. 4, 2013), ECF No. 61; Order at 4 *Teramura v. Walgreen Co.*, 5:12-cv-5244 (W.D. Ark. Mar. 7, 2013), ECF No. 39; Order at 3–4, *Taylor v. Drugstore Cowboys, Inc.*, Case No. 4:11-cv-269 (E.D. Ark. Mar. 22, 2012), ECF No. 65 *Watson v. Surf-Frac Wellhead Equipment Co., Inc.*, No. 4:11-cv-843-KGB, 2012 U.S. Dist. LEXIS 150968, at *2–3 (E.D. Ark. Oct. 18, 2012) (collective class certification granted Oct. 18, 2012); *In re Pilgrim's Pride Fair Labor Stds. Act Litig.*, 2008 U.S. Dist. LEXIS 93966, at *6–9 (W.D. Ark. Mar. 13, 2008); *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941 (W.D. Ark. 2003).

At the notice stage, a court does not make findings on legal issues or focus on whether there has been an actual violation of the law. Pilgrim's *Pride*, 2008 U.S. Dist. LEXIS 93966, at *9. The Court also refrains from making credibility determinations or resolving contradictory evidence. *Id.* The plaintiff's burden is "lenient" and may be met by making substantial allegations of class-wide discrimination that are supported by affidavits. *Freeman*, 256 F. Supp. 2d at 941.

Not only is fact-finding as to the merits inappropriate at the notice stage, but so is fact-finding as to the issue of whether plaintiffs and other class members are similarly situated. *See id.*

(stating that courts do not resolve contradictory evidence); *see also generally, Longcrier v. HL-A Co., Inc.,* 595 F. Supp. 2d 1218 (S.D. Ala. 2008).

In *Longcrier v. HL-A Co., Inc.*, six plaintiffs in the Southern District of Alabama moved to certify a class consisting of all hourly employees who were employed by defendant in various capacities at its automobile parts manufacturing facility at any time during the three years preceding the filing of the complaint. 595 F. Supp. 2d 1218, 1220-21 (S.D. Ala. 2008). Even with a broad proposed class, the court granted plaintiffs' motion for certification and court-approved notice. *Id.* at 1242.

The defendant argued that the plaintiffs were not "similarly situated" because the hourly positions held by putative class members covered a wide range of job titles, duties, pay ranges, and supervisors. *Id.* at 1238. Over the defendant's objections, the court held that plaintiffs' declarations and complaint allegations amounted to a substantial showing that all defendant's non-exempt employees were treated similarly and were subject to the same pay practices and policies with regard to "off-the-clock" work, rounding hours, and unpaid work during meal breaks. *Id.*

Importantly, the court further explained how factual disputes over the "similarly situated" requirement should be resolved at the second stage:

> At most, Defendant's evidence may create disputes of fact as to whether all hourly employees are or are not subject to the same policies. Those factual disputes may properly be addressed after discovery at the second stage of the FLSA collective action process . . . but they do not constitute a valid basis for denying conditional class certification today.

*Id.* (citing *Carmody v. Florida Ctr. For Recovery, Inc.*, No. 05-14295, 2006 U.S. Dist. LEXIS 81640, at *4 (S.D. Fla. Nov. 7, 2006) (explaining that it would be improper to engage in fact-finding to

determine conclusively whether the putative plaintiffs are similarly situated, where pleadings and supporting affidavits alleged facts sufficient to satisfy conditional class certification inquiry).

Because of this lenient standard and because courts do not resolve disputes of fact at this stage, courts regularly grant conditional certification based solely upon a plaintiff's complaint and supporting affidavits. *See Littlefield v. Dealer Warranty Services, LLC*, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010) ("In a typical case, the court decides whether to conditionally certify a class based solely on the plaintiffs' affidavits."); *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007) ("At the notice stage, the district court makes a decision— usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members."); *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 940 (W.D. Ark. 2007); Op. and Order, *Lopez v. Ozark Mountain Poultry, Inc.*, Case No. 5:13-cv-5272-TLB (W.D. Ark. June 17, 2014), ECF No. 34 (certifying a class based on a single declaration).

Further, a plaintiff need not show that her position is identical to the putative class members' positions, only that her position is similar to those of the absent class members. *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941 (W.D. Ark. 2003) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). The "similarly situated" determination requires only a modest factual showing. *Perez-Benites v. Candy Brand, LLC*, No. 07-cv-1048, 2008 U.S. Dist. LEXIS 91402, at *3 (W.D. Ark. Oct. 31, 2008). Although not defined by the FLSA, case law typically requires some showing that the plaintiff and putative members were victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion. *Smith v. Frac Tech Services, Ltd.*, 4:09-cv-679-JLH, 2009 U.S. Dist. LEXIS 109930, at *13 (E.D. Ark. Nov. 24, 2009) (citing *Resendiz-Ramirez,* 515 F. Supp. 2d at 937); *Katusch v. Premier Communications*, 504 F.

Supp. 2d 685 (W.D. Mo. 2007)); *see also Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (first-round "similarly situated" determination "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.").

Notably, several courts in the Eastern District of Arkansas have granted conditional certification of a nationwide class of employees against a Defendant when only one plaintiff appeared at the beginning of the case. The Hon. Leon Holmes granted conditional certification of a nationwide class in a single-plaintiff case, holding that [t]he undersigned does not require plaintiffs in a Fair Labor Standards Act case to establish that other potential class members desire to opt-in." Order, *Adams et al. v. United Cerebral Palsy of Central Arkansas, Inc., et al.*, 4:16-cv930-JLH (E.D. Ark. Dec. 28, 2016), ECF No. 14. Similarly, the Hon. Kristine Baker recently granted conditional certification of a nationwide class in a single-plaintiff case, holding that "[plaintiff] does not have the burden of offering evidence that other employees are interested in joining his proposed class as a prerequisite for conditional certification" in those circumstances.  Order, *Lamar, et al. v. Lacy One, LLC, et al.,* 4:16-cv-135-KGB (E.D. Ark. March 9, 2016), ECF No. 20. It simply is not required that there be more than one plaintiff to initiate a conditional collective action under Section 216 of the FLSA. Indeed, the purposes of the certification process are best served when the fewer and more vocal employees assert rights on behalf of the larger group against the defendant.

In general, the benefits of the two-tiered approach from *Mooney* are best realized when certification and notice are granted as soon as possible at the beginning of the case and prior to discovery. The second decertification stage mitigates the breadth and leniency of the first stage by

allowing for decertification if, after discovery is completed, it turns out that the class is not sufficiently similar to allow for an efficient adjudication of material, common issues, and facts. In sum, the point of the two-tiered approach to 216(b) classes is to provide a lenient stage, where timely notice is provided and preserving the rights of potential members, which is balanced by a more stringent stage to make sure that at least some issues in the case can be adjudicated on a class-wide basis.

2. <u>This Court should conditionally certify the classes proposed by Plaintiffs.</u>

This case is at the notice stage and is subject to the lenient standard based solely on pleadings and affidavits. The pleadings and attached declaration contain an abundance of information supporting Plaintiffs′ claim that there are many other individuals similarly situated. Plaintiffs represent a class of employees who entered into a relationship with Defendant for the purpose of earning money by working as Doctors and related staff employees for Defendants. Every doctors and related staffs' relationship with Defendants was subject to Defendants' universal practices, which violated the FLSA and other laws.

Specifically, Plaintiffs and the members of the putative classes were all employed by Defendants as doctors and related satff to work in the State of Arkansas and assistant patients and the operation of the North Metro Medical Center hospital. *See* Decl. of Crystal Holland (″Decl. Holland″) ¶ 3-4. ECF No. 21-7; *See* Decl. of Renee Montgomery (″Decl. Montgomery″) ¶ 3-4. ECF No. 21-8; *See* Decl. of Julius Petty (″Decl. Petty″) ¶ 3-4. ECF No. 21-9. *See* Decl. of Mohanned Ahmed (″Decl. Ahmed″) ¶ 3-4. ECF No. 21-10. The specific duties performed by Plaintiffs and the members of the putative classes varied but generally included providing care for patients in the

hospital. *Id.* at ¶ 5-7. These were the general duties that all members of the putative collective performed. *Id.* at ¶ 5-7.

In performing work as Doctors and related staff employees for Defendants, Plaintiffs and the putative class members worked in excess of forty (40) hours per week for Defendant. *Id.* at ¶ 7-10.  Defendants, however, had a policy of only paying Plaintiffs and other hourly-paid employees a of requiring overtime work without pay of time one and one-half (1.5) times their regular hourly rate when overtime wages would have been legally required. *Id.* at ¶¶ 7-10. This is the common policy imposed by Defendant that resulted in the violations of the FLSA alleged by Plaintiffs for the entire class. Members of the class are displeased with Defendant's policies and pay practices at issue in this case. *See generally* Decls. Holland, Montgomery, Petty, and Ahmed. ECF Nos. 21-7-10.

The allegations made by Plaintiffs establish that Plaintiffs and the members of the putative classes are similarly situated for purposes of conditionally certifying this case and providing the putative class members with notice and an opportunity to join this action. Defendant's policies and procedures described above are uniformly applicable to Plaintiffs and the members of the putative class, making this case ideally suited for conditional certification.

**B. This Court Should Approve Plaintiffs' Proposed Collective Action Notice and Consent Forms, Grant Leave for Plaintiffs to Send Notice through Mail and Text Message, and Order Defendant to Provide Contact Information for Potential Opt-Ins.**

If this Court grants conditional certification for notice purposes, this Court will need to make decisions about how to facilitate notice. Accordingly, Plaintiffs requests that this Court exercise its broad legal discretion and approve Plaintiffs' proposed collective action *Notice* and

*Consent to Join* forms, grant leave for Plaintiffs to send notice through the mail and text message, or alternatively, through mail and e-mail, and order Defendant to provide relevant contact information for potential opt-ins.

1.  This Court Has Broad Discretion to Issue Orders that Facilitate Early Notice to Potential Members of the Collective Action.

A district court "has broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler v. DirectSat USA, LLC*, 876 F. Supp. 2d 560, 574 (D. Md. 2012). Notice informs potential plaintiffs "of the facts needed to make an informed decision whether to opt-in." *Fisher v. Michigan Bell Telephone Company*, 665 F. Supp. 2d 819, 829 (E.D. Mich. 2009). While there are no well-defined rules for the form of notice, the general requirement is that the notice must be fair and accurate. *See e.g., id.; Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill 2007).

Further, courts should exercise their broad discretion to facilitate notice in a way that reaches the largest possible number of potential opt-in plaintiffs. *See Perrin v. Papa John's Int'l, Inc.*, No. 4:09-cv-1335-AGF, 2011 U.S. Dist. LEXIS 117046, at *5 (E.D. Mo. Oct. 11, 2011) ("The better course is to determine what constitutes fair and proper notice based on the facts of each case . . . . At this stage of the litigation, justice is most readily served by notice reaching the largest number of potential plaintiffs." (internal citations and quotation marks omitted)).

2.  This Court Should Exercise its Broad Discretion to Approve Plaintiffs' Proposed Notice and Consent Forms for Distribution, to Approve Plaintiffs' Proposed Means of Distribution, and to Order Defendant to Provide Contact Information of Putative Class Members.

In furtherance of the FLSA's "broad remedial" purpose, courts have the authority to notify potential opt-in plaintiffs that they may join an existing action early in the proceedings. *Hoffmann-*

*La Roche, Inc. v. Sperling,* 493 U.S. 165, 173 (1989); *See also Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1047 (Mar. 22, 2016); *Hussein v. Capital Bldg. Servs. Grp., Inc.,* 152 F. Supp. 3d 1182, 1190 (D. Minn. 2015); *Morales-Arcadio v. Shannon Produce Farms*, 237 F.R.D. 700, fn. 1 (S.D. Ga. 2006) (citing *Geurra v. Big Johnson Concrete Pumping, Inc.*, 2006 U.S. Dist. LEXIS 58973, *2 (S.D. Fla. 2006)). Plaintiffs′ proposed FLSA collective action *Notice* (ECF No. 8-1) provides employees with an accurate description of this lawsuit, their legal rights, and the process for participating in the case. It should be approved. *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 172, 174 (1989) (explaining that employees should receive ″accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate,″ and that notice should ″respect judicial neutrality . . . [taking] care to avoid even the appearance of judicial endorsement of the merits of the action.″). Accordingly, Plaintiffs ask the Court to conditionally certify this action as an FLSA collective action and approve the proposed notice to be sent to all non-exempt contract employees employed by Defendant within three years prior to the filing of the Original Complaint in this action.

> i.   *This Court should approve Plaintiffs′ proposed collective action class mail Notice, mail Consent form, and Follow-Up Postcard to be sent through U.S. Mail and set a ninety-day opt-in period.*

This Court should approve Plaintiffs′ proposed collective action mail *Notice* (ECF No. 21-1) mail *Consent to Join* form (ECF No. 21-2), and follow-up *Postcard* (ECF No. 21-5), to be sent through U.S. Mail and set a ninety-day opt-in period. Plaintiffs ask this Court for approval to send notice to all individuals who worked as hourly-paid nurse and janitorial or maintence employees for Defendants at any time in the the three years preceding the filing of Plaintiffs′ Original Complaint. This captures every hourly-paid employee for Defendants who could potentially fall

within the maximum three-year statute of limitations under the FLSA.  Furthermore, this keeps

the door open for this Court to grant equitable tolling to some or all potential plaintiffs if the facts

support it.[1]

Plaintiffs request a period of ninety (90) days during which to distribute notice and file opt-

in plaintiffs' consent forms with the Court.  Such distribution periods are frequently granted. *See*

Op. and Order at 9, *Lopez v. Ozark Mountain Poultry,* No. 5:13-cv-05272-TLB, ECF No. 34 (W.D.

Ark. June 17, 2014) (granting a ninety-day opt-in period); Order at 11, *Teramura v. Walgreen Co.*,

No. 5:12-cv-05244-JLH (W.D. Ark. Mar. 7, 2013), ECF No. 39 (same); *Watson v. Surf-Frac*

*Wellhead Equipment Co., Inc.*, No. 4:11-cv-843-KGB, 2012 U.S. Dist. LEXIS 150968, at *10 (E.D.

Ark. Oct. 18, 2012) (same); *Butler v. DirectSat USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012)

("Notice periods may vary, but numerous courts around the country have authorized ninety-day

opt-in periods for collective actions.").

Plaintiffs also ask this Court for permission to send a reminder *Postcard* to potential opt-ins

who do not respond within thirty (30) days of sending the notice to reduce the risk of mail delivery

problems. Mail delivery problems are unavoidable in collective actions.  *See* Decl. of Chris Burks

("Decl. Burks"), ¶¶ 5–14. ECF No. 21-6. In Counsel's experience, mail delivery problems have

actually prevented some members of putative classes from joining collective actions when they, in

---

[1] The doctrine of equitable tolling can, under the right circumstances, toll the statute of limitations in FLSA cases. *See, e.g.*, Op. and Order at 10–12, *Lopez*, No. 5:13-cv-05272-TLB, ECF No. 34 (granting equitable tolling where there was a long period of time between filing of motion for collective action and the order granting the motion); Memorandum Op. and Order at 7–10, *Whitworth*, No. 6:13-CV-06003-RTD, ECF No. 22 (granting equitable tolling where plaintiff exotic dancers undisputedly asserted that the employer misinformed plaintiffs that they were independent contractors and failed to post required information on wage and hour laws); *see also, Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169 (6th Cir. 2008); *Adams v. Tyson Foods, Inc.*, No. 07-CV-4019, 2007 U.S. Dist. LEXIS 38511 (W.D. Ark. May 25, 2007); *Chao v. Va. Dept. of Transp.*, 291 F.3d 276 (4th Cir. 2002); *Partlow v Jewish Orphans' Home of S. Cal., Inc.*, 645 F.2d 757 (9th Cir. 1981).  Indeed, courts have held that the equitable tolling doctrine "is read into every federal statute of limitation." *Kamens v. Summit Stainless, Inc.*, 586 F. Supp. 324, 328 (E.D. Penn. 1984) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)).

fact, wanted to join. *See Id.* Notices sent have been lost, even when the addresses were correct. *See Id.* at ¶ 8. Not only are notices lost going to putative class members, but they have also been lost after having been signed and mailed back to the law firm they originated from. *See Id.* at ¶¶ 7–10. In other cases, Plaintiffs' Counsel has received several telephone calls from recipients of postcards who did not receive the original notice. *See Id.* at ¶ 11. Plaintiffs' Counsel has also received undeliverable envelopes as much as 1,010 days after their original mailing. *See Id.* at ¶ 13. Allowing Plaintiffs' Counsel to send the follow-up *Postcard* to any class members who have not responded within thirty (30) days after the mailing of the initial *Notice* would provide a fair and equitable solution to ensure that all members of the proposed class who want to join the lawsuit are able to. *See Id.* at ¶ 15.

Courts have routinely approved the sending of follow-up postcard reminders by mail and e-mail. Such follow-up reminders contribute to dissemination among similarly situated employees and serve what the Supreme Court in *Hoffmann-La Roche v. Sperling* recognized as section 216(b) 's "legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." 493 U.S. 165, 172 (1989). The reminder also serves the purpose "to inform as many potential plaintiffs as possible of the collective action and their right to opt-in." *Chhab v. Darden Rests., Inc.*, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013). Accordingly, courts around the country, including courts within Arkansas, have recognized the usefulness of a reminder notice. *See, e.g.*, Op. and Order at 9–10, *Lopez v. Ozark Mountain Poultry, Inc.*, No. 5:13-cv-05272-TLB (W.D. Ark. June 17, 2014), ECF No. 34 (granting leave to send follow up postcard to class members who do not respond to the written notice within thirty days); Order at 6, *Bonton v. Centerfold Entertainment Club, Inc.*, Case No. 6:14-cv-6074-RTD (W.D. Ark. Oct. 9, 2014), ECF

No. 12 (same); *Harger v. Fairway Mgmt.*, 2016 U.S. Dist. LEXIS 74373, *12 (W.D. Mo. June 8, 2016); *Woods v. Caremark PHC, LLC*, 2016 U.S. Dist. LEXIS 138021, *12 (W.D. Mo. Aug. 2, 2016); *Davis v. Bd. Of Trs. Of N. Kan. City Hosp.*, 2015 U.S. Dist. LEXIS 94325, *5-6 (W.D. Mo. July 21, 2015); *Ortiz-Alvarado v. Gomez*, 2014 WL 3952434, at *6 (D. Minn. Aug. 13, 2014). The reminder *Postcard* is similarly appropriate here.

> ii.   *This Court should enter orders permitting notice by means of text message, in addition to traditional U.S. Mail and approve the form and content of Plaintiffs' proposed text message and link to electronic Notice and Consent to Join.*

In addition to providing *Notice* via traditional U.S. Mail, this Court should permit Plaintiffs to disseminate notice via text message to putative class members' cell phone numbers. Plaintiffs' request to use text messages to distribute *Notice* and *Consent to Join* forms is fair, reasonable, and specifically intended to meet the goal of distributing notice, which is to actually notify putative class members of the current litigation and permit a reasonable opportunity to join.

At the outset, Plaintiffs point out that electronic communication in the form of e-mail is a commonly-utilized, appropriate, and efficient manner of communicating with plaintiffs and putative class members, and is generally used in conjunction with traditional mailing.  *Butler v. DirectSat USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) ("With regard to [plaintiff's request to use] e-mail to notify potential plaintiffs of this litigation, communication through e-mail is now the norm.") (internal editing and quotation marks omitted).[2] The current trend of utilizing

---

[2]   *See also* Order at 11, *Gronefeld v. Integrated Prod. Servs., Inc.*, 5:16-cv-55 (W.D. Tex. April 26, 2016), ECF No. 21 ("Email is not the wave of the future; [it] is the wave of the last decade and a half."); *Jones v. JGC Dall. LLC*, No. 3:11-cv-2743-O, 2012 U.S. Dist. LEXIS 185042, at *18–19 n.9 (N.D. Tex. Nov. 29, 2012) (collecting cases); *Margulies v. Tri-County Metro. Transp. Dist. of Or.*, No. 3:13-cv-475-PK, 2013 U.S. Dist. LEXIS 146484, at *59–61 (D. Or. Oct. 10, 2013) (citing *Alequin v. Darden Rests., Inc.*, No. 12-61742, 2013 U.S. Dist. LEXIS 108341, 2013 WL 3945919, at *2 (S.D. Fla. July 31, 2013); *Ritz v. Mike Rory Corp.*, No. 12-cv-367-JBW-RML, 2013 U.S Dist. LEXIS 61634, 2013 WL 1799974, at *5 (E.D.N.Y. Apr. 30, 2013); *Rehberg v. Flowers Foods, Inc.*, No. 3:12cv-596, 2013 U.S. Dist. LEXIS 40337, 2013 WL 1190290, at *3 (W.D.N.C. Mar. 22, 2013); Order, *Tingey v. Bass Fishing & Rentals, LLC, et al.*, No. 5:15-cv-

traditional and electronic mailing methods "advances the remedial purpose of the FLSA, because service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit, and of their opportunity to participate." *Atkinson v. TeleTechHoldings, Inc.*, No. 3:14-cv-253, 2015 U.S Dist. LEXIS 23630, *12 (S.D. Oh. Feb. 26, 2015).

In short, electronic notice in the form of e-mail communication is a generally accepted practice for distributing notice that furthers the goals of the FLSA. In 2013, the *Margulies* court granted the plaintiffs permission to distribute notice by e-mail, noting that in contrast to the time when *Hoffman-LaRoche* was decided in 1989, people now commonly correspond by e-mail. 2013 U.S. Dist. LEXIS 146484, at *59–61.

Further, there is no reason why the electronic communication providing notice should not also be distributed in the form of a text message. In today's modern era, communication by text message is extremely common. Not surprisingly then, courts frequently permit dissemination of collective action notice to potential claimants via a text message under a variety of circumstances and for a variety of reasons. *See e.g., Irvine v. Destination Wild Dunes Mgmt.*, 132 F. Supp. 3d 707 (D.S.C. 2015); *Vasto v. Credico (USA) LLC*, 2016 U.S. Dist. LEXIS 60158 (S.D.N.Y. May 5, 2016); *Martin v. Sprint/United Mgmt. Co.*, 2016 U.S. Dist. LEXIS 352 (S.D.N.Y. Jan. 4, 2016); *Dempsey v. Jason's Premier Pumping Servs., LLC*, Civil Action No. 15cv-703-CMA-NYW, 2015 U.S. Dist. LEXIS 187322 (D. Colo. Nov. 11, 2015); *Eley v. Stadium Grp., LLC*, 2015 U.S. Dist. LEXIS 126184 (D.D.C. Sept. 22, 2015); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-3624-RJS, 2015 U.S.

---

705-FB (W.D. Tex. Jan. 6, 2016), ECF No. 25 (granting leave to send notice via mail and email); Order, *George v. Go Frac LLC, et. al.*, No. 5:15-cv-943-XR (W.D. Tex. Jan. 13, 2016), ECF No. 24 (same); Order at 5, *Bridgewater v. GES Gladiator Energy Servs. Tex. LLC*, No. 5:15-cv-975-RP (W.D. Tex. Dec. 22, 2015), ECF No. 9 (same); Order at 13, 16, *Cummings v. Bost, Inc.*, No. 2:14-cv-2090-PKH (W.D. Ark. April 13, 2015), ECF No. 60 (citing *Davenport v. Charter Comms., LLC*, 2014 WL 2993739, *9 (E.D. Mo. July 3, 2014)).

Dist. LEXIS 90616 (S.D.N.Y. July 13, 2015). The *Irvine* court approved of three methods of distributing notice, stating:

> The request that notice be distributed via direct mail, e-mail, and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's e-mail address and cell phone number serving as the most consistent and reliable method of communication. Political candidates now routinely seek out their supporters' cell phone numbers and e-mail addresses because traditional methods of communication via regular mail and landline telephone numbers quickly become obsolete. The Court is unpersuaded by Defendant's argument that notice beyond first class mail is "redundant, wasteful . . . and could compromise the integrity of the notice process." (Dkt. No. 55 at 24). Therefore, the Court approves notice via regular mail, e-mail, and text messaging.

132 F. Supp. 3d at 711.

Further, just as disseminating notice via e-mail serves the legitimate purpose of ensuring notice reaches as many putative class members as possible, this purpose is served even more so by text message. Smartphone usage is now almost universal among the approximately 1,000 wage lawsuits that Plaintiffs' Counsel has represented in the past few years. Decl. Burks ¶ 19. In Plaintiffs' Counsel's experience, wage lawsuit plaintiffs and opt-in plaintiffs are not only responsive to communication via text message, but text messaging is *the* preferred method of communication. *Id.* at ¶ 20. Support for the general efficacy of text messaging is more than anecdotal, since marketing research shows that ninety percent (90%) of text messages are read within three minutes of receipt, and possibly as much as ninety-eight percent (98%). *Id.* at ¶ 21. E-mail opening rate, on the other hand, appears to hover around 25%. *See Id.* at ¶ 22.

While the class of opt-ins would benefit by the ease and efficiency of a paperless notice and consent process, the benefits of disseminating notice via text message go beyond mere convenience to the putative class members. Unlike traditional mail, text messages do not get "lost in the mail." Cell phones are portable, even more readily portable than most laptop computers, and they can be

checked from virtually any location, often regardless of wireless internet access. Cell phone numbers are also "portable" in the sense that, although a person's physical address changes when he or she relocates residences, the person can and often does maintain his or her same cell phone number. All of these facts increase the likelihood that notice will actually be received by the putative class member. Compare this with notice via regular mail, which risks not only lost notices but also lost consents, as discussed above, and the status of text messaging as a critical component of the notice process becomes undeniable.

Although the above analysis indicates that no special circumstances should be necessary to warrant notice by text message because of the inherent value of communicating electronically with class members, this case is ideally suited for distributing notice via text message. Plaintiffs and many members of the putative class already use text messaging for work-related purposes. Decls. Ahmed, Petty, Montgomery and Holland ¶¶ 16-18, ECF No. 21-7.  Hourly-paid employees consistently carried smartphones and were contacted via those phones by Defendant.  *Id.* In sum, additional notice by text message will do no harm; instead, it will further the central purpose of sending out the notice by traditional U.S. Mail: giving the putative class members *actual* notice of these proceedings so that they can make an informed decision about whether to participate.

To facilitate notice via text message, this Court should approve of Plaintiffs' proposed procedure for disseminating notice by text message, which is simple and easy for the Court to monitor. First, Plaintiffs' Counsel would be responsible for sending a text message to cell phone numbers for the putative class members provided by Defendant. Exhibit 3 contains the language that Plaintiffs propose for the text message to be sent to putative class members. *See* ECF No. 21-3.

When the putative class member clicks on the link in the text message, he or she will be taken to a website containing electronic copies of the court-approved *Notice* (ECF No. 21-1) form and the *Electronic Consent to Join* (ECF No. 21-4). From the website, putative class members could print the *Notice* or read it in electronic form. Putative class members who wish to join the lawsuit could then choose to print, sign, and return a paper copy of the *Electronic Consent to Join* form or electronically sign the *Electronic Consent to Join* form using the RightSignature service.[3] This is similar to the process used in *Dempsey v. Jason's Premier Pumping Servs., LLC*, No. 15-cv-703-CMA-NYW, 2015 U.S. Dist. LEXIS 187322, at *4-5 (D. Colo. Nov. 11, 2015). As with mailed *Notice*, Plaintiffs request a ninety-day period in which to file *Consents to Join* submitted by putative class members.

Plaintiffs further request that this Court permit the sending of a follow-up text message to the same phone numbers to which the text message regarding notice was sent. Conceptually, the follow-up text message is the same as the follow-up *Postcard* that Plaintiffs have asked this Court to approve. The follow-up text ensures putative class members whose consents were mailed (or electronically submitted) but not received are made aware of this fact, and it ensures that putative class members who may not have received the original *Notice* are given an opportunity to learn of and join this litigation. The follow-up text would be sent on the same timeframe as the follow-up *Postcard*. Exhibit 3 contains the language that Plaintiffs propose for the follow-up text. *See* ECF No. 21-3.

---

[3] More information about RightSignature is available at https://rightsignature.com/how-itworks/send. Many courts have already approved of the use of electronic signatures generally. *See Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 518 (W.D. Tex. 2015); *White v. Integrated Elec. Techs., Inc.*, No. 11-2186, 2013 U.S. Dist. LEXIS 83298, at *39 (E.D. La. June 13, 2013); *Jones v. JGC Dall. LLC*, Civil Action No. 3:11-CV2743-O, 2012 U.S. Dist. LEXIS 185042, at *18 (N.D. Tex. Nov. 29, 2012).

> iii.   *In the event that this Court should deny Plaintiffs' request for distribution of notice via text message, Plaintiffs alternatively requests that this Court permit distribution of notice by means of e-mail, in addition to traditional U.S. Mail and approve the form and content of the electronic Notice and Consent.*

In the event that this Court should deny Plaintiffs' request for distribution of notice by means of text message, Plaintiffs alternatively requests that this Court approves of distributing *Notice* and *Consent to Join* forms via e-mail to all known e-mail addresses, including private as well as company-sponsored addresses, belonging to Defendant's current and former non-exempt contract employees that meet the class definition. As set forth in the previous section, many courts have approved of the e-mail in conjunction with regular mail for the purpose of distributing notice. E-mail distribution should be to both personal and company-sponsored e-mail addresses; district courts in the Western District of Arkansas have approved of distribution by both methods.

In *Lopez v. Ozark Mountain Poultry, Inc.*, the court held that "utilizing Defendant's e-mail system to notify employees of alleged violations of federal wage-and-hour committed by their employer is, by definition, a purpose related to the business itself," and therefore an appropriate use of an FLSA defendant's e-mail system. Order at 9 n.4, No. 5:13-cv-5272-TLB (W.D. Ark. June 17, 2014), ECF No. 34. On the other hand, in a case where the defendant did not have a business e-mail system, the Western District of Arkansas ordered the disclosure of any personal e-mail addresses of potential class members of which the defendant was aware.  Order at 5, *Bonton v. Centerfold Entertainment Club, Inc.*, No. 6:14-cv-6074-RTD (W.D. Ark. Oct. 9, 2014), ECF No. 12.

This Court should also approve Plaintiffs' means of sending an electronic version of the *Notice* (ECF No. 21-1) and the *Electronic Consent to Join* (ECF No. 21-3) and obtaining electronic signatures through the software located at www.RightSignature.com.  Decl. Chris Burk at ¶28, ECF No. 21-6. Exhibit 3 is the language that Plaintiffs intend to use in the body of the e-mails

containing the *Notice* and *Electronic Consent to Join* attachments. *See* ECF No. 21-3, 4. The specific e-mail language is necessary because people expect the subject and body of an e-mail to explain why the recipient is receiving an attachment. This Court should approve the language of the e-mail represented in Exhibit 3 because it is narrowly tailored to explain what the e-mail is for and should also satisfy the reasonable expectations of any e-mail recipient that the e-mail is not spam.

Plaintiffs' Counsel's e-mail tells the recipient to expect a separate e-mail from www.Rightsignature.com and gives instructions for signing the Consent electronically to avoid some minor but common mistakes. *See* Decl. Burks ¶¶ 30–31. The RightSignature service automatically sends a reminder e-mail thirty days after the initial sending of the *Electronic Consent to Join* to those who have not yet signed, and the Court should approve this process for the same reasons as the follow-up *Postcard* and follow-up text message.

> iv.  *This Court should order Defendant to provide the names, last known mailing addresses, and last known work and personal e-mail addresses and cell phone numbers in an electronically manipulatable format, such as Excel.*

To facilitate the sending of the *Notice* and *Consent to Join*, this Court should order Defendant to provide the names; last known mailing addresses, as well as phone numbers, in an electronically manipulatable format such as Excel, for anyone who worked as an hourly-paid nures or janitorial employee for Defendants at any time from three years prior to the filing of the complaint. In the event that the Court approves of e-mail notice rather than text messaged notice, then the information should include all known e-mail addresses, including personal and company-sponsored e-mail addresses, for the putative class members.

In *Hoffmann-La Roche*, the Supreme Court held that it was appropriate for the district court to order disclosure of the names and addresses of possible opt-in plaintiffs.  493 U.S. 165, 170

(1989). Courts routinely grant disclosure of names and addresses of potential opt-in Plaintiffs in conjunction with authorizing notice. *Id.* The information requested is necessary for Plaintiffs to execute the notice plan proposed herein.

Plaintiffs ask this Court to provide for the following information no later than seven (7) days after entry of an Order certifying this case as a collective action: (1) the names of each and every hourly-paid nure and maintenance or janorital employee for Defendants that worked any for three years prior to the filing of the complaint, including any aliases they may have gone by or go by now; (2) the last known mailing addresses of the non-exempt contract employees for the same time period; and (3) any and all phone numbers of which Defendants is aware for any non-exempt contract employee (or alternatively, any and all e-mail addresses of which Defendants are aware for any such non-exempt contract employee). Plaintiffs ask for this order because this information is in Defendants' possession, not Plaintiffs', and this information is necessary to facilitate notice.

Finally, Plaintiffs request that this Court direct Defendant provide the information requested above in a manipulatable electronic format such as Microsoft Word or Excel. Any other manner of providing the contact information will only result in unnecessary delay and expense.

### III.   EXPEDITED REVIEW REQUIRED

Plaintiffs further request expedited consideration of his certification motion and expedited production of information for notice. Plaintiffs in collective actions are entitled to such treatment. Order, *Adams et al. v. United Cerebral Palsy of Central Arkansas, Inc., et al.*, 4:16cv-930-JLH (E.D. Ark, April 27, 2017), ECF No. 14 ("Because this case needs to be expedited, the Court will not write a lengthy opinion discussing the law of conditional certification.") "Sending notice to potential class members early in a case facilitates the broad remedial purpose of the FLSA and

promotes efficient case management." *Boudreaux v. Schlumberger Tech. Corp.*, 2015 U.S. Dist. LEXIS 22870 (W.D. La. February 25, 2015); *See also Garner v. G.D. Searle Pharmaceuticals & Co.*, 802 F.Supp. 418 (M.D. Ala. Oct. 30, 1981) (citing *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 173 (1989)). In FLSA collective actions—unlike Rule 23 class actions—the statute of limitations for the FLSA claims of potential opt-in plaintiffs is *not tolled* by a plaintiff's initial filing of the complaint absent a Court order. 29 U.S.C. § 256(b). Thus, delay in disseminating notice to potential plaintiffs can prejudice their rights. *See Gortat v. Capala Bros., Inc.*, No. 07-cv-3629, 2010 WL 1423018, at *9 (E.D.N.Y. Apr. 9, 2010) ("Because the statute of limitations for FLSA claims continues to run for each individual plaintiff until he or she opts in . . . early certification and notice are favored in order to protect plaintiffs' rights."); *accord Smith v. Lowe's Companies, Inc.*, No. 2:04-cv-774, 2005 WL 6742234, at *3-4 (S.D. Ohio May 11, 2005) (Because "statute of limitations period continues to run against each potential class member . . . it is *widely accepted* that, at the notice stage . . . the plaintiff's burden . . . is *extremely light.*") (emphasis added).  Accordingly, Plaintiffs asks the Court to adopt the following deadlines and notice plan:

| DEADLINE | DESCRIPTION OF DEADLINE |
|---|---|
| **7 Days From Order Approving Notice to Potential Collectives Members** | Defendant to produce the names, last known addresses, e-mail addresses, phone numbers and dates of employment of the Putative Collective Members in a usable electronic format. |
| **14 Days From Order Approving Notice to Potential Collective Members** | Plaintiffs' Counsel shall send by mail and text message, or alternatively, by mail and e-mail, a copy of the Court-approved *Notice* and *Consent* Form to the Putative Collective Members. *See* ECF No. 21-1, 21-2, 21-4, 21-5. |
| **90 Days From Date Notice is Mailed to Potential Collective Members** | The Putative Collective Members shall have 90 days to return their signed |

| | |
|---|---|
| | *Consent* forms for filing with the Court. |
| **30 Days from Date Notice is Mailed to Potential Collective Members** | Plaintiff's Counsel is authorized to send by mail and text message, or alternatively by mail and e-mail, a reminder *Postcard* to the Putative Collective Members reminding them of the deadline for the submission of the *Consent* forms. *See* ECF No. 21-3. |

## IV. CONCLUSION

Plaintiffs have met the lenient burden imposed at the conditional certification stage. Because Defendants' policies that underlie Plaintiffs' allegations of FLSA violations are the same for the Plaintiffs and all of the putative class members, Plaintiffs and putative members are similarly situated as victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion. Accordingly, the Court should certify the class as requested by Plaintiffs. Plaintiffs further respectfully request that this Court: (1) order Defendants produce the contact information of those putative class members no later than one week after the date of the entry of the Order granting the current motion; (2) approve the form of the *Notice* and *Consent to Join*; (3) approve the sending of the *Notice* and *Consent to Join* with Plaintiffs' Original Complaint and Defendants' Answer; (4) approve the sending of the *Postcard* and follow-up text message or e-mail; (5) approve of notice through both U.S. mail and text (or alternatively e-mail); and (6) grant Counsel a period of ninety (90) days from the date Defendants fully and completely releases the potential class members' contact information during which to  distribute the *Notice* and to file *Consent to Join* forms.

Respectfully submitted,

**CRYSTAL HOLLAND,**
Individually and On Behalf
Of All Others Similarly Situated; and
**RENEE MONTGOMERY, JULIUS PETTY,
JOE DAUGHERTY, and MOHANNED
AHMED,**
Each Individually and
On Behalf Of All Others Similarly Situated
**PLAINTIFFS**

wh Law, PLLC
1 Riverfront Pl. – Suite 745
North Little Rock, AR 72114
(501) 891–6000

By:     Chris W. Burks
        Chris W. Burks
        (ABN: 2010207)
        chris@wh.law

        Brandon M. Haubert
        (ABN: 2013137)
        brandon@wh.law