IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CRYSTAL HOLLAND, individually and on
behalf of all others similarly situated,** *et al.*                                **PLAINTIFFS**

v.                          Case No. 4:20-cv-00344 KGB

**ALLEGIANCE HOSPITAL OF NORTH
LITTLE ROCK, LLC,** *et al.*                                                 **DEFENDANTS**

## ORDER

Before the Court is the motion for conditional certification, for disclosure of contact information, and to send notices of plaintiffs Crystal Holland, individually and on behalf of all others similarly situated; and Renee Montgomery, M.D.; Joe Daugherty, M.D.; and Mohanned Ahmed, M.D.,[1] individually and on behalf of all others similarly situated (Dkt. No. 21). Plaintiffs allege that defendants Allegiance Hospital of North Little Rock, LLC, d/b/a NorthMetro Medical Center; T. Jason Reed; Freedom Behavioral Hospital of Central Arkansas, LLC; Rock Bordelon; GPN/Jacksonville, LLC; and Allegiance Health Management, Inc., failed to pay them and all other similarly situated employees lawful minimum wages and overtime compensation for hours worked in excess of 40 per week in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Arkansas Minimum Wage Act ("AMWA"), Arkansas Code Annotated § 11-4-201, *et seq.* (Dkt. No. 12). Defendants responded to plaintiffs' motion (Dkt. No. 23), and plaintiffs

---

[1] The Court draws attention to the affidavit submitted by Mr. Ahmed in which his first name is spelled "Mohanned." (Dkt No. 21-10). This is a different spelling than appears in plaintiffs' amended complaint (Dkt. No. 12). The Court directs plaintiffs' counsel within seven days from the entry of this Order to inform the Court whether plaintiff Dr. Ahmed's first name on the docket should be altered to correspond to the spelling that appears in his affidavit.

replied (Dkt. No. 24).  For the following reasons, the Court grants, in part, and denies, in part, plaintiffs' motion to certify collective action (Dkt. No. 21).

   I.   **Factual Background**

Plaintiffs have submitted sworn declarations of Ms. Holland, Dr. Montgomery, Dr. Daugherty, and Dr. Ahmed (Dkt. Nos. 21-7; 21-8; 21-9; 21-10).  Ms. Holland avers that she was employed by defendants as a marketing and intake specialist during times relevant to this lawsuit (Dkt. No. 21-7, ¶¶ 3-4).  Ms. Holland worked in the Jacksonville, Arkansas, hospital facility (*Id.*, ¶ 4).  Ms. Holland states that defendants paid her and all other staff a set rate for the amount of work that she did for the hospital every two weeks (*Id.*, ¶ 6).  She states that her duties for defendants included working more than 40 hours per week in most if not all workweeks during the relevant period producing marketing communications materials for the hospital (*Id.*, ¶ 7).

She states that many other employees of defendants who were hospital staff workers were also required to work more than 40 hours per week during the relevant period and that she knows this because she is personally familiar with other hospital staff who are situated similarly (*Id.*, ¶ 8).  Ms. Holland avers that it is common for office staff to work more than 40 hours per week (*Id.*, ¶ 9).

Ms. Holland states that she was not paid for the amount of time that she worked in July and August 2019 (*Id.*, ¶ 10).  She asserts that defendants knew that she and other staff were working during that time but that defendants did not pay them and that the nonpayment included a lack of both minimum and overtime wages of one and one-half times her regular hourly rate for all of the hours she worked in excess of 40 hours per week (*Id*).  Ms. Holland avers that she has spoken with other staff and hospital employees who, at the time, also reported not receiving any amounts of pay from their same employer for July and August 2019; that she does not know the exact number

of people who were subject to defendants' policy requiring work without lawful minimum wage and overtime pay; however, that she believes that the collective exceeds 30 people; and that, based on her experience and conversations with other employees of the defendants, she believes many other former employees of defendants would be interested in participating in this lawsuit (*Id*., ¶¶ 11-13).

Dr. Montgomery avers that she was employed by defendants as a doctor during times relevant to this lawsuit (Dkt. No. 21-8, ¶¶ 3-4). Dr. Montgomery worked in the Jacksonville, Arkansas, hospital facility (*Id*., ¶ 4). Dr. Montgomery is familiar with other hospital staff workers, such as other doctors or staff positions, who were employed by defendants in the Jacksonville, Arkansas, hospital facility because she met with some of them during the course of performing her job duties (*Id*.). Dr. Montgomery states that defendants paid her and all other doctors and staff a set rate for the amount of work that she did for the hospital every four weeks (*Id*., ¶ 6). She states that her duties for defendants included working more than 40 hours per week in most if not all workweeks during the relevant period caring for patients for the hospital (*Id*., ¶ 7).

Dr. Montgomery asserts that many other employees of defendants who were hospital staff workers were also required to work more than 40 hours per week during the relevant period and that she knows this because she is personally familiar with other hospital staff situated similarly (*Id*., ¶ 8). Dr. Montgomery avers that, due to the nature of the job, it is common for doctors to work more than 40 hours per week (*Id*., ¶ 9).

Dr. Montgomery states that she was not paid for the amount of time that she worked in July and August 2019 (*Id*., ¶ 10). She asserts that defendants knew that she and other doctors were working during that time but that defendants did not pay them and that the nonpayment included a lack of both minimum and overtime wages of one and one-half times her regular hourly rate for

all of the hours she worked in excess of 40 hours per week (*Id*). Dr. Montgomery avers that she has spoken with other doctors and hospital employees who, at the time, also reported not receiving any amounts of pay from their same employer for July and August 2019; that she does not know the exact number of people who were subject to defendants' policy requiring work without lawful minimum wage and overtime pay; however, that she believes that the collective exceeds 30 people; and that, based on her experience and conversations with other employees of the defendants, she believes many other former employees of defendants would be interested in participating in this lawsuit (*Id*., ¶¶ 11-13).

Dr. Daugherty avers that he was employed by defendants as a doctor during times relevant to this lawsuit (Dkt. No. 21-9, ¶¶ 3-4). Dr. Daugherty worked in the Jacksonville, Arkansas, hospital facility (*Id*., ¶ 4). Dr. Daugherty is familiar with other hospital staff workers, such as other doctors or staff employed by defendants in the Jacksonville, Arkansas, hospital facility because he met with some of them during the course of performing his job duties (*Id*.). Dr. Daugherty states that defendants paid him and all other doctors and staff a set rate for the amount of work that he did for the hospital every four weeks (*Id*., ¶ 6). He states that his duties for defendants included working more than 40 hours per week in most if not all workweeks during the relevant period caring for patients for the hospital (*Id*., ¶ 7).

Dr. Daugherty asserts that many other employees of defendants who were hospital staff workers were also required to work more than 40 hours per week during the relevant period and that he knows this because he is personally familiar with other hospital staff who are situated similarly (*Id*., ¶ 8). Dr. Daugherty avers that, due to the nature of the job, it is common for doctors to work more than 40 hours per week (*Id*., ¶ 9).

Dr. Daugherty states that he was not paid for the amount of time that he worked in July and August 2019 (*Id.*, ¶ 10).  He asserts that defendants knew that he and other doctors were working during that time but that defendants did not pay them and that the nonpayment included a lack of both minimum and overtime wages of one and one-half times his regular hourly rate for all of the hours that he worked in excess of 40 hours per week (*Id.*).  Dr. Daugherty avers that he has spoken with other doctors and hospital employees who, at the time, also reported not receiving any amounts of pay from their same employer for July and August 2019; that he does not know the exact number of people who were subject to defendants' policy requiring work without lawful minimum wage and overtime pay; however, that he believes that the collective exceeds 30 people; and, that, based on his experience and conversations with other employees of the defendants, he believes many other former employees of defendants would be interested in participating in this lawsuit (*Id.*, ¶¶ 11-13).

Dr. Ahmed avers that he was employed by defendants as a doctor during times relevant to this lawsuit (Dkt. No. 21-10, ¶¶ 3-4).  Dr. Ahmed worked in the Jacksonville, Arkansas, hospital facility (*Id.*, ¶ 4).  Dr. Ahmed is familiar with other hospital staff workers, such as other doctors or staff employed by defendants in the Jacksonville, Arkansas, hospital facility because he met with some of them during the course of performing his job duties (*Id.*).  Dr. Ahmed states that defendants paid him and all other doctors and staff a set rate for the amount of work that he did for the hospital every four weeks (*Id.*, ¶ 6).  He states that his duties for defendants included working more than 40 hours per week in most if not all workweeks during the relevant period caring for patients for the hospital (*Id.*, ¶ 7).

Dr. Ahmed asserts that many other employees of defendants who were hospital staff workers were also required to work more than 40 hours per week during the relevant period and

that he knows this because he is personally familiar with other hospital staff situated similarly (*Id.*, ¶ 8). Dr. Ahmed avers that, due to the nature of the job, it is common for doctors to work more than 40 hours per week (*Id.*, ¶ 9).

Dr. Ahmed states that he was not paid for the amount of time that he worked in July and August 2019 (*Id.*, ¶ 10). He asserts that defendants knew that he and other doctors were working during that time but that defendants did not pay them and the nonpayment included a lack of both minimum and overtime wages of one and one-half times his regular hourly rate for all of the hours that he worked in excess of 40 hours per week (*Id*). Dr. Ahmed avers that he has spoken with other doctors and hospital employees who, at the time, also reported not receiving any amounts of pay from their same employer for July and August 2019; that he does not know the exact number of people who were subject to defendants' policy requiring work without lawful minimum wage and overtime pay; however, that he believes that the collective exceeds 30 people; and, that, based on his experience and conversations with other employees of the defendants, he believes many other former employees of defendants would be interested in participating in this lawsuit (*Id.*, ¶¶ 11-13).

### II.     Analysis

In their motion for conditional certification, plaintiffs ask the Court to certify conditionally the following collective: "[e]xcept for hourly-paid janitorial workers, hourly-paid maintenance staff workers, and hourly-paid nurses, all employees of Defendants at North Metro Hospital in Jacksonville, AR who worked hours in July and August 2019 for which they were not paid a lawful minimum wage or overtime wage." (Dkt. No. 21, ¶ 5).

### A.     FLSA Conditional Certification

Under the FLSA:

> An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Many district courts in the Eighth Circuit utilize a two-step approach in collective action cases. At the notice stage, the Court must determine, based on the pleadings and affidavits, whether notice should be given to potential class members. The key issue is whether the members of the proposed class are similarly situated. If the Court allows notification, then a representative class is conditionally certified, and plaintiffs will send notice to the putative opt-in plaintiffs. At the second stage, the Court determines whether to decertify the class once discovery is largely complete. *Smith v. Frac Tech Services, Ltd.*, Case No. 4:09-cv-679, 2009 WL 4251017, at *2 (E.D. Ark. Nov. 24, 2009) (citation omitted). This Court has previously adopted this approach. *See McChesney v. Holtger Bros., Inc.*, Case No. 4:17-cv-824, 2019 WL 118408, at *2 (E.D. Ark. Jan. 7, 2019); *Cruthis v. Vision's*, Case No. 4:12-cv-244, 2013 WL 4028523, at *1-2 (E.D. Ark. Aug. 7, 2013); *Watson v. Surf-Frac Wellhead Equip. Co.*, Case No. 4:11-cv-843, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012).

"'To establish that conditional certification is appropriate, the plaintiff[] must provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1018 (S.D. Iowa 2016) (alteration in original) (quoting *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008)). Plaintiffs' factual burden at this stage is not onerous. *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010). Plaintiffs' burden at the notice stage is lenient and may be met by making a "modest factual showing," typically by the submission of affidavits, that he and the

7

putative class were victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion. *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (citing *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1106-08 (10th Cir. 2001)). However, while this is a "lenient standard, . . . 'more than mere allegations' are required." *Tegtmeier*, 208 F. Supp. 3d at 1018 (quoting *Robinson*, 254 F.R.D. at 99).

"Typically, district courts will make the determination of whether to conditionally certify a class based solely on the affidavits presented by the plaintiffs." *Huang v. Gateway Hotel Holdings*, 248 F.R.D. 225, 227 (E.D. Mo. 2008) (citation omitted). The Court can consider a variety of non-exclusive factors in determining whether employees are similarly situated. Such factors include: (1) whether the employees held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether the employees were subjected to the same policies and practices and, if so, whether the policies and practices were established in the same manner and by the same decision maker; and (5) the extent to which the acts constituting the alleged violations are similar. *Stone v. First Union Corp.*, 203 F.R.D. 532, 542-43 (S.D. Fla. 2001) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1090, 1097-99 (11th Cir. 1996)). "The Court does not need to determine whether class members are *actually* similarly situated until the 'merits stage' of the litigation, when defendants typically move to decertify the class." *Tinsley v. Covenant Care Servs., LLC*, Case No. 1:14-cv-00026-ACL, 2015 WL 1433988, at *1 (E.D. Mo. Mar. 27, 2015) (emphasis in original) (citing *Littlefield*, 679 F. Supp. 2d at 1016-17).

Plaintiffs assert that in a companion case, United States District Judge Brian S. Miller granted conditional certification to a distinct set of nurses, maintenance workers, and janitors who worked for the same defendants as the present case (*Id.*, ¶ 3).  *See Mazanti et al. v. Bordelon et al.*, Case No. 4:20-cv-49-BSM.  In their motion, plaintiffs ask the Court to approve distribution of the proposed notice and consent to join *via* U.S. mail and text message or, in the alternative, email.  Plaintiffs propose distribution a reminder postcard *via* U.S. mail and text message or, in the alternative, email.  Plaintiffs request an opt-in period of 90 days (*Id.*, at 4-5).

In their response to the motion, defendants ask the Court conduct a hearing on the issue of conditional certification, deny the motion, reject plaintiffs' proposed forms, and direct counsel to reach an agreement where possible on issues related to an opt-in notice a procedure before deciding any unresolved issues (Dkt. No. 23).  Defendants contend that plaintiffs have not identified a policy for the class that supports conditional certification other than the "'policy' of not paying employees for work performed in July and August of 2018 [sic]." (Dkt. No. 23, at 4).  Defendants also contend that plaintiffs have not submitted evidence supporting the existence of defendants' policy (*Id.*).  Defendants argue that plaintiffs have offered insufficient evidence that other employees are willing to join this lawsuit to justify conditional certification (*Id.*, at 5).

In their reply, plaintiffs argue that defendants do not dispute that they may obtain conditional certification by making a modest factual showing that they are similarly situated; that they have established with affidavits that they are similar situated victims of a common nonpayment policy; and that they have produced evidence of others desiring to join the collective (Dkt. No. 24).

Based on the limited record before it, the Court determines that plaintiffs' declarations and the allegations in the amended complaint suffice to show that the members of the proposed

collective were alleged victims of a purported common nonpayment policy during the relevant time period.  The Court finds that plaintiffs have carried their lenient burden of establishing at this stage of the litigation that they are similarly situated to all employees, except for hourly-paid janitorial workers, hourly-paid maintenance staff workers, and hourly-paid nurses, of defendants at North Metro Hospital in Jacksonville, Arkansas, who worked hours in July and August 2019 for which they were not paid a lawful minimum wage or overtime wage.  Therefore, the Court conditionally certifies this action under the FLSA and the AMWA for purposes of giving notice.

        **B.**     **Notice And Disclosure Of Contact Information**

Plaintiffs request that this Court permit them to provide notice to potential opt-in plaintiffs through U.S. mail and text message or, alternatively, email and that this Court permit plaintiffs to distribute a follow-up reminder postcard *via* traditional U.S. mail and text message or, alternatively, email (Dkt. No. 21, ¶ 11).  Plaintiffs submitted with their motion a proposed notice of right to join lawsuit, proposed consent to join collective action, proposed text of electronic transmissions, consent to join collective action, and proposed second notice of right to join collective action (Dkt. Nos. 21-1; 21-2; 21-3; 21-4; 21-5).  Plaintiffs request a period of 90 days to distribute the notice and file consent to join forms with this Court (Dkt. No. 21, ¶ 10).  Plaintiffs also ask this Court to enter an Order directing defendants to produce the names, last known mailing addresses, cell phone numbers, and email addresses of potential opt-in plaintiffs no later than one week after the date of the entry of the Order granting this motion (*Id.*).  Further, plaintiffs ask that defendants be required to post the notice in a conspicuous location in the same areas in which it posts government-required notices to guarantee notice to defendants' current employees (*Id.*, ¶ 12).

In response, defendants object to the Court requiring them to post notice and to plaintiffs' request for a 90-day opt-in period. Defendants argue that a 60-day opt-in period is sufficient. Defendants also object to sending electronic notices and contend that plaintiffs should send notices by U.S. mail only.

In their reply, plaintiffs concede to notice distribution by U.S. mail and email with reminder postcards, but defendants continue to request a 90-day opt-in period arguing that defendants have not shown that the 90-day period would be "harmful in any way." (Dkt. No. 24, at 7).

The Court grants, in part, and denies, in part, plaintiffs' motion as it pertains to notice to potential opt-in plaintiffs (Dkt. No. 21, ¶ 10). The Court grants plaintiffs' motion to the extent that they seek to provide potential opt-in plaintiffs with notice *via* U.S. mail and email. Accordingly, plaintiffs may send one written notice and consent form to the potential opt-in plaintiffs *via* email and one written notice and consent form *via* U.S. Mail. Plaintiffs' proposed notice of right to join lawsuit and consent to join collective action are acceptable (Dkt. Nos. 21-1; 21-2). The proposed text of electronic transmissions and consent to join collective action are also acceptable to the Court (Dkt. Nos. 21-3; 21-4). The Court grants plaintiffs' request to distribute a reminder postcard *via* traditional U.S. mail. The proposed text of the postcard is acceptable to the Court (Dkt. No. 21-5). The Court denies without prejudice plaintiffs' request to require defendants to post the notice in their facilities.

The Court grants, in part, and denies, in part, plaintiffs' motion as it pertains to disclosure of contact information (Dkt. No. 21, ¶ 10). To facilitate notice, the Court orders defendants to provide plaintiffs' counsel the names, including any aliases they may have gone by or go by now, last known mailing addresses, and all known email addresses, including personal and company-sponsored, for every employee who worked for defendants at North Metro Hospital in

11

Jacksonville, Arkansas, in July and August 2019, excluding all current and former hourly-paid janitorial workers, all hourly-paid maintenance staff workers, and all hourly-paid nurses, within 21 days of the date of this Order.  The Court also directs defendants to provide such information to plaintiffs' counsel *via* Microsoft Word or Excel formatting or another readily accessible electronic format.  After receiving such information, plaintiffs shall then have 90 days to distribute notice and file opt-in consent forms with the Court.

### III.   Conclusion

For the reasons discussed above, the Court denies defendants' request for hearing and grants in part and denies in part plaintiffs' motion for conditional certification, for disclosure of contact information, and to send notices (Dkt. No. 21).  The Court conditionally certifies the following class:

> Except for hourly-paid janitorial workers, hourly-paid maintenance staff workers, and hourly-paid nurses, all employees of defendants at North Metro Hospital in Jacksonville, Arkansas, who worked hours in July and August 2019 for which they were not paid a lawful minimum wage or overtime wage.

To facilitate notice, defendants are ordered to provide to plaintiffs' counsel the names, last known mailing addresses, and all known email addresses, including personal and company-sponsored, for every employee who worked for defendants at North Metro Hospital in Jacksonville, Arkansas, in July and August 2019, excluding all current and former hourly-paid janitorial workers, all hourly-paid maintenance staff workers, and all hourly-paid nurses, within 21 days of the date of this Order.  Plaintiffs shall have 90 days from the date defendants provide this information to distribute notice to the potential opt-in plaintiffs and to file copies of the consent forms with the Court.  Plaintiffs may provide notice to the class of individuals consistent with the terms of this Order.

It is so ordered this 21st day of July, 2022.

                                            */s/ Kristine G. Baker*
                                            Kristine G. Baker
                                            United States District Judge